**John YOUNG et ux., Appellants,**

v.

**Elmer C. GARDNER et ux., Appellees.**

**No. 16162.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 17, 1974.

Rehearing Denied Feb. 28, 1974.

Coleman, C. J., filed dissenting opinion and opinion dissenting from denial of motion for rehearing.

William E. Matthews, Ben G. Sewell, Sewell, Junell & Riggs, Houston, for appellants; Danny R. Edwards, Houston, of counsel.

Thomas M. Phillips, Ronald L. Palmer, Houston, for appellees; Baker & Botts, Houston, of counsel.

EVANS, Justice.

This case is the result of an unfortunate dispute between neighboring owners, the Youngs and Gardners.

Appellants John Young and wife, Betty Young, brought suit against appellees Elmer C. Gardner and wife, Thelma K. Gardner, to rescind an agreement to amend certain building line restrictions; for injunctive relief, and, alternatively, for damages. Appellees by cross-action sought injunctive relief, damages and correction of deed description. At the conclusion of the evidence, appellants' case was withdrawn from the jury and judgment entered that appellants take nothing. Special issues were submitted to the jury on appellees' cross-action but so far as material here, the jury's findings did not constitute the basis of the trial court's judgment. The trial court entered judgment in favor of appellees, as a matter of law, granting certain injunctive relief and requiring delivery of a correction deed from appellants. A majority of the court has concluded that the case must, in part be affirmed, and, in part, be reversed and remanded for a new trial.

In January, 1966, appellants John and Betty Young acquired a tract of approximately two acres of expensive residential land in the Tall Timbers section of River Oaks in the City of Houston. In October, 1966, appellants subdivided this tract into two parcels, Tract A and Tract B, and in their Declaration of Subdivision, they subjected the property to the following restrictions:

"1. No overhead utility lines such as telephone, lights, etc. shall be permitted to cross over any portion of Lots A and B except as may be in existence at the time hereof.

"2. All utility, garage or service areas shall be screened with a brick wall sufficient in height to obscure the presence of such utility, garage or service area from the other residents as may be located on said Lots A and/or B.

"3. No structure shall be built on Lot B nearer than 40 feet from the South boundary line of said Lot or nearer than 60 feet from the west boundary line of said lot.

"4. No use shall be made of the 40′ easement adjoining Lots A and B other than as a driveway or drive area and no use shall be made thereof or any structure placed thereon which would in any manner limit the use of such 40′ easement for ingress and egress of vehicular traffic to Lot A."

A subsequent Declaration was filed by the Youngs in June, 1967, for the asserted purpose of correcting certain errors in the metes and bounds description of the property and for the purpose of reserving to the Youngs a 10-foot easement for driveway purposes across Tract B. This Declaration was filed after the Youngs had entered into earnest money agreement with the Gardners for the sale of Tract B to the Gardners but before the closing of the sales transaction which occurred in July, 1967.

The relationship of the two tracts to each other and to the 10-foot and 40-foot access easements leading to Westlane, a public street, are shown on the reproduction of the plat attached to the June, 1967 Declaration of Subdivision. The 40-foot easement was the subject of prior litigation in Anderson v. Tall Timbers Corporation, 378 S.W.2d 16 (Tex.Sup.), which determined that the easement had not been dedicated as a public street.

Appellants John and Betty Young delivered their deed to the appellees Elmer C. and Thelma Gardner, on July 10, 1967, describing Tract B by metes and bounds, expressly subjecting it to all restrictions, covenants, conditions, easements and reservations shown of record and reserving specifically a 10-foot easement for driveway purposes along the southerly line of the tract as shown on the above mentioned plat.

In August, 1967, appellee Gardner sought to obtain an amendment to the recorded restrictions so as to permit the construction

of his home at a point 15 feet, rather than 40 feet from the south line and 35 feet, rather than 60 feet, from the west line. To accomplish this purpose, he had prepared and himself presented to the Youngs, a plat with an agreement typed thereon which bears a typewritten date of August 25, 1967. The evidence is uncontroverted that Gardner also prepared and presented to the Youngs, in connection with the aforementioned plat, two elevation drawings depicting separate side views of the Gardners' proposed home. On one of these drawings Gardner made a notation, "This is what the Youngs see," indicating a view of the Gardners' proposed home from the west line of the Gardner tract; on the other, he made the notation, "This is what the guests see," indicating a view from the driveway leading to the Youngs' home. The plats and drawings referred to above are shown on the following page.

In September or early October, 1967, appellee Gardner commenced construction of his home on Tract B. In late October, 1967, Gardner wrote to Young, stating his understanding with respect to various matters and enclosing a formal instrument to be executed and acknowledged by Young and Gardner and their respective wives. This instrument purported to correct certain errors in the metes and bounds description of Tract B, and to amend the recorded building line restrictions in accordance with the distances shown in the August 25, 1967, document. The appellants Young refused to execute this instrument and construction of the Gardner home continued. As the construction of the carport and service area progressed, the Youngs became more dissatisfied with its location and appearance. A photographic picture of the carport, as constructed, is also shown on the following page. After fur-

EXHIBIT "A"

August 25, 1967

We agree to amend the restrictions applicable to Lot 1, Block 91, Tall Timbers Addition, to allow for construction of improvements on Tract 3 no nearer than 15 feet from the South boundary and 35 feet from the West boundary.

Elmer C. Gardner

Thelma K. Gardner

John Young

Betty L. Young

This is what the
young's see

The Gardner
21 West

This is what the
Guests see

The Gardner
21 West

Defendant's Exhibit No. 10

ther discussions and correspondence between the parties, appellants subsequently filed this action seeking temporary and permanent injunction. The hearing on appeal of the trial court's order refusing temporary injunction and granting injunctive relief to the Gardners is reported in Young v. Gardner, 435 S.W.2d 192 (Tex.Civ.App.—Houston [14th] 1968, n. w. h.).

In their first amended petition the Youngs alleged that the Gardners, prior to the commencement of construction of their residence indicated to the Youngs they desired an amendment of the restrictive covenants affecting their Tract B, and exhibited to the Youngs drawings of their proposed improvements; that Gardner represented to and assured the Youngs that if they would agree to such desired amendment, all utility, garage and service areas on the Gardners' tract would be screened with a brick wall sufficient in height to obscure the presence of such areas from the Youngs' land and from the driveway easements south of the Gardners' tract; that in reliance on such drawings, representations and assurances the Youngs had indicated to the Gardners they would be willing to join in an instrument amending the building line restrictions and accordingly approved such change as shown by the instrument of August 25, 1967. The Youngs further alleged that contrary to such drawings, representations and assurances, the Gardners had proceeded to construct their improvements so that there was an open and unscreened vehicle parking and service area, and that the carport and servants' quarters were covered with wood plank instead of a brick wall fronting on said 40-foot easement. The Youngs asked that the instrument of August 25, 1967, be cancelled and rescinded; that they be given injunctive relief against the construction of the improvements on the 10-foot easement area and in a manner which

they contended violated the recorded restrictions; and alternatively, that they be awarded damages. Appellants Gardner answered, specifically asserting, among other things, that before consummating the purchase with the Youngs, they received and relied on assurances from the Youngs that "should it become necessary" the Youngs would agree to any reasonable change in the building line restrictions so as to permit the Gardners to go forward with their building plans; that the drawings which Gardner presented to the Youngs in connection with the August 25, 1967 instrument were shown to the Youngs "as a visual aid" in explanation of the need for the change of the building line restrictions and that the Youngs were advised he proposed to build an open garage or carport closed on two sides and with an overhanging roof. In their crossaction appellees Gardner sought to recover damages for appellants' trespass over the 10-foot easement area and for injunction against further trespass and use of said area until the 40-foot easement should become unavailable as a driveway; for a deed with correct metes and bounds description of the Gardners tract; for damages for the Youngs refusal to give such conveyance, and for damages for asserted slander of title by reason of the filing of notice of lis pendens.

In response to special issues the jury found that the Gardners had reasonably relied on the instrument of August 25, 1967 in locating their home on the tract they had purchased; that they had reasonably changed their economic position in reliance on the instrument and that the Youngs had failed to deliver a deed with boundary lines which would close. The jury failed to find that the Gardners had been unable to sell their home at its reasonable market value as the result of the Youngs' filing of the lawsuit and the associated lis pendens notice and by reason of failure to deliver the correct deed. The trial court's final judgment recites that the appellants Young take nothing; that they are enjoined from

using in any manner whatsoever, without written consent of the Gardners, the 10-foot easement in question and are to remain enjoined until such time as the adjoining 40-foot easement shall become unavailable for use as a driveway or does not qualify or suffice as a path of ingress and egress under any ordinance, statute or other restriction; that until the occurrence of either or both of such events, the Gardners shall have the right of use of the 10-foot easement to erect a brick wall or for any other purposes not violative of the restrictions in force and effect on Tract B; that the Gardners have constructed a brick wall on the front part of the 10-foot easement and an 8-foot brick wall is contemplated on the rear portion of the 10-foot easement, all of which the trial court found to be authorized by the contractual relationship existing between the parties and enjoined the Youngs from interfering with the construction of such fence until the happening of one or both of the occurrences mentioned above, in the event of which, the appellees Gardner were instructed to remove any obstruction from the 10-foot easement so that same might be used as a driveway for ingress and egress to Tract A. The judgment further provided that the appellants Young would deliver to the Gardners a conveyance with description by metes and bounds of the tract as set forth in the judgment. All other relief was denied.

Appellants' points of error contend the trial court erred in withdrawing the appellants' case from the jury and rendering a take nothing judgment against appellants, as a matter of law; in failing to submit certain special issues to the jury as requested by appellants; in refusing to permit appellants to offer evidence that the August 25, 1967 instrument had been executed upon appellees' representation and promise there would be no carport fronting the driveway; that the structure fronting the driveway would present a solid brick face to persons using such driveway and that the building line restrictions would be

amended by a subsequent written instrument and was never intended as a final and complete agreement between the parties. Appellants further contend that the trial court erred in determining, as a matter of law, that appellants had no current right to use the 10-foot easement; in permitting appellees to obstruct the easement; in authorizing the construction of the 8-foot wall, and in determining, as a matter of law, that appellants would be required to deliver the deed as specified in the judgment.

We have concluded the trial court erred in its ruling excluding the evidence offered on behalf of appellants and we sustain appellants points five, six and seven. In view of this determination, we need not consider whether there was competent evidence in the record, aside from such excluded evidence, which would support the trial court's action in withdrawing the case from the jury and entering judgment against appellants as a matter of law. See McDonald, Texas Civil Practice (1970 Rev.), Sec. 11.28.4, pp. 244–245.

At the inception of trial, appellees Gardner presented a motion in limine to exclude all evidence of oral agreement between the parties that the Gardners would screen their garage and service facilities, not only from the Youngs' property to the west but also along the 40-foot driveway to the south, asserting that such evidence would tend to vary or contradict the terms of the aforementioned instrument of August 25, 1967 in violation of the parol evidence rule, and would also violate the Statute of Frauds. The trial court granted this motion and throughout the trial its rulings based on the motion served to prevent appellants Young from offering evidence on the matters covered by that ruling.

Appellant Young was permitted to testify without objection that he and his wife Betty had decided to sell their front lot (Tract B) and to build on their rear lot (Tract A). He stated that when he and his wife planned their house and finalized their building plans with their designer, they were concerned with how they could protect their right of access to the rear lot and with the restrictions which should be imposed, "as we were building a very expensive home on the lot in the back." Young testified that as a result they decided on the four building restrictions which they put in their subdivision declaration. Young testified that Gardner first started constructing his own home in the latter part of September or the first part of October, 1967; that in December, 1967, when he (Young) discovered that the construction was not being done in compliance with the restrictions, that discussions followed but that Gardner kept right on building and ignoring complaints that he was violating the restrictions. According to Young's testimony, Gardner "kept telling us that he was going to comply with them and he wasn't doing anything wrong; that he was going to comply with them completely." Young said that he first discovered that Gardner intended to construct a garage area adjacent to the driveway in January, 1968 and that he met with Gardner and his attorney on the property early that month. He said they had subsequent meetings until April, when the suit was filed, in an effort to try to reach some agreement and to "get Mr. Gardner to stop building and to conform to our deed restrictions."

Young further testified that he had discussed the boundary line problem with Gardner prior to Gardner's October, 1967 letter to him; that Gardner had advised him of errors in the metes and bounds description. Young said he had never agreed with Gardner to share in the cost of a wall on their common line as recited in the proposed agreement. On cross-examination Young testified he would have had no objection if Gardner had built the garage area back 40 feet from the main driveway as required by and subject to the screening requirements of the deed restrictions.

Roger Rasbach, a professional designer of homes, testified that the Young home had been the subject of an article in

"House Beautiful" magazine and had been selected because it was considered an unusually outstanding home. He stated he had been retained by Young to assist in designing a plan of restrictions for the property which "would be of a nature to insure that their home and the accompanying home would be of the highest aesthetic value." He further testified that of his own knowledge the Gardner home was not in compliance with the recorded restrictions as it had been constructed; that the reasonable market value of the Youngs' house if the Gardner home had been constructed at a location in compliance with the recorded building set-back lines would have been $500,000.00 and that as actually constructed the location of the Gardner home reduced the reasonable market value of the Young home to $300,000.00. He said he based his opinion on the factor that there was no set-back whatsoever of the Gardner house and no screening of the carport area. (On objection by appellee, the trial court instructed the jury to exclude the testimony as to the screening factor). Rasbach further testified without objection that the type of construction of the carport was commercial, as opposed to residential; that the appearance of the carport area was aesthetically displeasing and was not the type of carport that would be appropriate for an expensive home such as the Youngs' and the Gardners'. He said the reason he decided to locate the set-back line 40 feet from the driveway was that if a garage were to be located on that side, it would "not be viewable" because the distance from the driveway would allow screening.

Mrs. Betty Young testified the driveway from Westlane to her home was part of the entrance to her house and was discussed at great length in the initial planning with Rasbach; that the restrictions of the tract they intended to sell and did sell to Gardner was an integral part of the planning and designing of their home. She testified that she participated in discussion with Gardner prior to signing the August 25, 1967 agreement and was shown drawings and house plans representing the way the Gardner house would be built; that she was never advised that Gardner intended to build a carport in connection with his house and that the Gardner house was not finally built as represented to her. She further testified that Gardner made certain representations to her concerning the drawings of the house but the trial court refused to permit her to testify concerning such representations on objection by appellants' counsel that such testimony violated the court's ruling on the motion in limine. She testified without objection that she could stand on her property and see the Gardners' unscreened carport.

On bill of exception Mrs. Young reiterated her testimony that she could stand on her property and see the unscreened carport; that the purpose of the set-back line in the recorded restrictions was to give ample room for screening; that the elevation drawings of the proposed construction of the Gardner house were shown to her when the August 25, 1967 document was presented by Gardner and there was no carport reflected on the face of such drawings; that there was specific discussion concerning the carport; that she and her husband were willing to change the restrictions as to the set-back lines but only on condition that there would be no service area facing the driveway; that Gardner represented the square area on the south line of the property to be some kind of building that was to be all brick; that it was never represented to her to be a garage or carport. She said she signed the August 25, 1967 document on the basis of "our agreement" and told Gardner he could build closer than 15 feet if he complied with the screening restrictions. She said they never gave Gardner permission to build the carport nor told him it was all right to build a garage where he did. She said at the time she signed the August 25, 1967 document, she anticipated that there would be an instrument which would incorporate their entire agreement. She further testified that the drawings and representations made by Gardner in connection with

the August 25, 1967 document induced her to sign; that she would not have signed without such inducements and that Gardner did not comply with the representations which he had made to her in the drawings and verbally with respect to the construction of his house. She said when she executed the instrument of August 25, 1967 she did so with the understanding that it would not become binding until Gardner had complied with his agreements. She said Gardner had violated his inducements by constructing the open carport and service area on the driveway next to the entrance to their house.

Mr. John Young testified on the bill of exceptions that he had been induced by Gardner to sign the instrument of August 25, 1967 upon the basis of drawings presented and representations made by Gardner to him; that he would not have signed the instrument had it not been for such drawings and representations; that he was never shown any drawings by Gardner of an open carport or unscreened garage and that Gardner had not complied with the representations and inducements made at such time; that at the time of such discussion Gardner told him that he would see from his home and from the driveway the pictures depicted by the drawings and that the instrument of August 25, 1967 did not incorporate the entire agreement made between the parties. He said he anticipated that an instrument which would incorporate the entire agreement would be forthcoming at a later time. In summary, Young testified that Gardner had not built his house in accordance with the drawings submitted to them in connection with the instrument of August 25, 1967.

Mr. Gardner testified that prior to entering into the earnest money agreement, Young told him there was some sort of restriction that he planned on putting on the property but that he would amend the restrictions to meet the future owner's needs; he said Young did not go into detail at that time about what the future restrictions were. He said his carport had been constructed to substantial completion in the latter part of November or early December and that Young had never made any complaint to him that he was building too close to the property line with his carport. He said in December, 1967, Mr. Young objected to him about the appearance of the carport. Gardner further testified that he first learned of the recorded restrictions for the building set-back lines at time of closing. He said he was assured at such time by Young that the set-back line restrictions would be amended when he, Young, was presented the plot plan of the house to be built on the property. Gardner said that when he first went on the property with Young, he was told that there were some building restrictions on the land so that he, Young, would have control and restraint over the property; however, he said Young assured him that when he told Young what he had in mind, that he, Young, would make a change in the restrictions. Gardner first testified that he was not really sure whether he had ever discussed the carport with the Youngs before submitting to them the instrument of August 25, 1967. He said, "I think we talked about the carport there and I showed them this instrument here." Later he said he advised them, the Youngs, he was going to build a carport and that they made no objections. He did not discuss with the Youngs how the carport was going to be built or the type of materials which he intended to use.

It is uncontroverted that at the time the instrument of August 25, 1967 was considered and executed by the parties, Gardner presented to the Youngs, as part of the same transaction, the elevation drawings of the proposed Gardner home. Gardner himself pleaded and testified that he used the drawings as a "visual aid" to demonstrate to the Youngs the nature of the home he intended to construct. The basic difference in the parties' testimony is that Gardner contends the drawings (and his explanation of the drawings) was not at variance with the carport and service area as they

were actually constructed. The Youngs on the other hand contend that the drawings (and Gardner's representations of them) do not show an open carport and service area, as Gardner contends, but rather an enclosed brick wall. The admitted testimony, as well as that excluded, clearly demonstrates that the instrument of August 25, 1967 was not executed in a vacuum but, to the contrary, that the building set-back lines were being considered and discussed as one of several matters pertaining to the general plan of development of the parties' respective properties.

In the light of surrounding circumstances, the instrument of August 25, 1967 was not shown to be a presently effective, final and complete embodiment of all agreements which the parties naturally would have included therein as to the transaction in question. The writing does not meet the description of a contract which shows on its face "a complete expression of the whole agreement, without any uncertainty or ambiguity as to the object and extent of engagement." Guarantee Life Ins. Co. v. Davidson, 234 S.W. 883 (Tex.Com.App.1921).

■ The language of the instrument itself cannot be said to be certain and unambiguous. The phrase "We agree to amend" might be construed either as a statement of an accomplished act or as a mere promise or agreement to act in the future. It is undisputed that in October, 1967 Gardner submitted a formal written agreement to the Youngs which purported to then effectively amend the building line requirements as set forth in the August 25, 1967 instrument. From this circumstance it might be inferred by the trier of facts that the instrument of August 25, 1967 was only intended to be a memorandum of the parties' agreement on one item of a contemplated final and complete agreement to be executed in the future. See Miller v. Wilson, 258 S.W. 540 (Tex.Civ.App.—San Antonio 1924, n. w. h.). Under the circumstances shown by the record, the phrase "We agree to amend" is of doubtful import and capable of more than one meaning. We find that the instrument of August 25, 1967 is uncertain and ambiguous and that the full intention of the parties cannot be ascertained from the writing itself. City of Houston v. McCarthy, 340 S.W.2d 559 (Tex.Civ.App.—Waco 1960, writ ref. n. r. e.).

■ We are also of the opinion that the excluded testimony was admissible because it merely explained collateral agreements which, according to the Youngs, formed the inducements or consideration for the writing, and that such evidence was not inconsistent with the terms of the writing. The instrument of August 25, 1967 purports to amend (or to agree to amend) only the building set-back restrictions on the Gardner tract. The instrument is silent as to the inducements or consideration to be furnished by the Gardners. In his own testimony Gardner gave his version of the circumstances surrounding the execution of the instrument and as to the inducements or consideration which he contended he furnished. In our opinion, the testimony offered by appellants on their bill of exception serves to fill in and explain the representations and assurances which, according to the Youngs, constituted the inducements or consideration to be furnished by the Gardners. These expressions have merely to do with the plan of proposed construction of the Gardner home and to show the Youngs' contention that they were led to believe that a later instrument covering their entire agreement with Gardner would be submitted to them for execution. These expressions relate to matters entirely collateral to and consistent with the designation of the building set-back lines as set forth in the instrument of August 25, 1967. Accordingly, proof of such collateral agreements does not violate the parol evidence rule. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30 (1958). Although the subject matter of these collateral agreements may be related to that expressed in the written instrument,

the parol evidence rule is not applicable if the collateral expressions do not contradict the writing and if the subject matter is that which might naturally have been dealt with separately by the parties. Garza v. Garza, 371 S.W.2d 934 (Tex.Civ.App.—Austin 1963, n. w. h.).

In the testimony excluded by the trial court, the Youngs sought to explain the inducements and consideration which led them to execute and deliver to the Gardners the instrument of August 25, 1967. According to this testimony, Gardner represented to the Youngs by the drawings and his explanation of them that he would build a home having no open carport or service area facing the driveway to the Youngs' home and that the instrument of August 25, 1967 was merely a memorandum of their agreement with respect to the building set-back lines which would not become effective until the full and complete agreement had been prepared and executed by the parties. This testimony was not inconsistent with the face of the writing. Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515 (1946). Both the drawings and the Youngs' testimony, including that excluded, were admissible to show the inducements or consideration for the writing. Smith v. Pulliam, Inc., 388 S.W.2d 329 (Tex.Civ.App.—Fort Worth 1963, writ ref. n.r.e., Tex. 394 S.W.2d 791); Rubin v. Adams, 368 S.W.2d 42 (Tex.Civ.App.—Amarillo 1963, writ ref. n.r.e.); Phillips v. Woodard, 306 S.W.2d (Tex.Civ.App.—Texarkana 1957, writ ref., n.r.e.); Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184 (1955); Callaway v. Albin, 114 Tex. 5, 261 S.W. 372 (1924); 3 Tex. Law Review 293. The issues of fraud, ambiguity, want of consideration and effectiveness of delivery were raised by the pleadings and the evidence and the excluded testimony was admissible on such issues. McFarland v. Shaw, 45 S.W.2d 193 (Tex.Com.App.1932), wherein Justice Sharp at page 195, quoting 3 R.C.L. pp. 869–70, stated:

" 'Many of the exceptions to the parol evidence rule are quite as well settled as the general rule and require only a mere statement. It may not be contended for example, that, as between the parties to an instrument parol evidence is incompetent to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties, or that its obligation has been fully discharged by an oral collateral agreement. So in a controversy between the parties or others charged with notice proof may be made of a collateral agreement, which was the consideration for the instrument, or which postpones the legal operation of the writing until the happening of a contingency. And again, an instrument is to be construed, as in any other case, in the light of its subject matter, and the circumstances in which and the purposes for which it was executed, which evidence is always admissible in the construction of written contracts, in order to put the court in the position of the parties.' "

We find no merit in appellees' contention that the excluded evidence violates the statute of frauds. Appellants' action was not to enforce the oral agreements of appellees but on the contrary was to rescind and cancel the instrument of August 25, 1967 and to enjoin appellees' use of the premises in violation of the restrictions set forth in the appellants' Declaration of Subdivision. Although appellants did, in their general prayer for relief, ask for damages allegedly occasioned by appellees' construction of improvements on Tract B in violation of the building restrictions, this request was made in the alternative and only in the event appellants' prayer for injunctive relief should not be granted. All such relief, injunctive and alternatively for damages was, insofar as material here, necessarily dependent upon appellants' first showing a right to recision and cancellation of the instrument of August 25, 1967. See Marantz v. Weisberg, 33 S.W.2d 505 (Tex.Civ.App.

—Ft. Worth 1930, writ dism'd). The statute of frauds has no application in this situation. Cearley v. May, 106 Tex. 442, 167 S.W. 725 (1914); Caballero v. Taylor, 290 S.W. 815 (Tex.Civ.App.—San Antonio 1927, n.w.h.); Meek v. H. & N. Machining, Inc., 420 S.W.2d 227 (Tex.Civ.App.—Fort Worth 1967, n.w.h.); Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488 (1942).

A review of the entire record reveals that appellants Young were prevented throughout the trial from presenting evidence on these issues due to the court's ruling on appellees' motion in limine. The record shows that the trial court concluded and so informed counsel that evidence would not be received as to any collateral expressions between the parties relating to the August 25, 1967 instrument. It is equally clear that both court and counsel understood throughout the trial that appellants would be permitted to make a bill of exceptions in order to preserve error for appellate review of the trial court's ruling. After completing the bill of exceptions there was no duty on the part of appellants' counsel to make any further presentation or tender of evidence and the bill sufficiently apprised the trial court of the nature and extent of the evidence sought to be offered and which was excluded by the trial court's ruling. Rules 372, 373, Texas Rules of Civil Procedure; Mc-Donald, Texas Civil Practice (rev.1970), Vol. 3, Sec. 11.31, pp. 257–9. The exclusion of this evidence was definitely harmful and requires the cause be reversed and remanded for new trial.

In view of our ruling on the trial court's exclusion of evidence, it becomes unnecessary for us to decide the matters asserted in the appellants' first four points of error.

■ Appellants' eighth point of error is that the trial court erred in holding, as a matter of law, that the Youngs have no current right to use any part of the 10-foot easement reserved for use as a driveway on the south line of Tract B and enjoining

such use. We are of the opinion the trial court was justified in its holding and in granting this relief. The Youngs' deed to the Gardners purports to reserve a ten (10) foot easement for driveway purposes along the southerly line of Tract B "as set out in instrument recorded Volume 6819, page 249 of the Deed Records of Harris County, Texas." The recorded instrument referred to is the June, 1967 Declaration of Subdivision filed by the Youngs, which recites that Tract B is subject to a 10-foot easement "being for use and benefit of Tract A as a driveway only, and to be used as such only in the event that the adjoining 40-foot easement shall be unavailable for use as a driveway or in the event the 40-foot easement does not qualify or suffice as a path of ingress and egress for Tract A under any ordinance, statute or other restriction." We find, as did the trial court, that the instruments creating and reserving the 10-foot easement provide that it could be used only in the event the 40-foot easement should be unavailable for use as a driveway or did not qualify for access under an ordinance, statute or other restriction. We have considered and find no merit in appellants' contention that Sec. 504(a) of the City Code of the City of Houston adversely affects the availability of the 40-foot easement for use as a driveway. In the event appellants or their successors in ownership to Tract A should be denied use of the 40-foot easement as a driveway as provided in the instruments, it is clear from the terms of the judgment that they shall have the right to use of the 10-foot reserved easement for such purpose. We, accordingly, order the appellees' cross-action on this point severed from the cause, and as so severed, the trial court's order is affirmed.

■ Appellants' ninth and tenth points of error contend that the trial court erred in holding, as a matter of law, that appellees were authorized to build and maintain an 8-foot wall on the 10-foot easement. While not specifically argued, we believe appellants' points of error raise

the question of whether the construction of this wall would be in violation of the building set-back line restrictions. Whether the proposed wall is a "structure" within the meaning of the restrictions depends upon its nature and the form and purpose of the restrictions. Stewart v. Welch, 142 Tex. 314, 178 S.W.2d 506 (1944). The restrictions should be considered in their entirety and in light of the construction which the parties themselves placed upon them. Brite v. Gray, 377 S.W.2d 223 (Tex.Civ.App.—Beaumont 1964, n.w.h.). A reading of the above quoted restrictions shows that a wall was contemplated to screen utility, garage and service areas and the instrument of August 25, 1967 indicates a wall along the west line and along a portion of the south line of Tract B. There was a great deal of testimony and some correspondence concerning the nature and location of a wall separating the two properties. The trial court's judgment recites that its ruling is based on the "contractual relationship" of the parties. In view of our decision that this cause must be reversed and remanded on the issues pertaining to the instrument of August 25, 1967, we sustain appellants' points of error numbers nine and ten.

Appellants' eleventh point of error is that the trial court erred in holding, as a matter of law, that appellants should be required to give appellees a deed containing description as set forth in the judgment.

The uncontroverted testimony of appellees' surveyor, as well as the documentary exhibits and plats received in evidence, show two rather minor errors in called distances in the deed. The first of these was obviously due to a typographical error, the call being for 192 feet instead of 1.92 feet as shown in earlier instruments. The second was a "short call" of 272.48 feet instead of 281.63 feet which created a deficiency in distance of 9.15 feet in the last called distance in the deed description. The deed called for ground objects which were found by the surveyor and which, of course, control over any discrepancies in called distance. Slight discrepancies in called distance are not unusual even under the improved surveying techniques of today. We find that the evidence established, as a matter of law, the actual ground location of Tract B as described in the deed. Under the pleadings and evidence appellees were entitled to a correction of their deed description with respect to the discrepancies discussed above. However, the trial court proceeded to go beyond these matters and on the basis of other evidence, but without jury findings, purported to rewrite certain course and distance calls in the deed. Absent agreement of the parties or other legal basis for a reformation of the conveyance, the trial court was not justified in making substantial changes in the calls of the deed. Inasmuch as this cause must be reversed and remanded for a new trial on the plaintiffs' case, we reverse and remand the trial court's judgment on appellees' cross-action for further proceedings consistent with this opinion.

Affirmed and severance ordered as to the trial court's judgment and decree that appellants shall be enjoined from the use of the 10-foot easement for driveway purposes unless and until the adjoining 40-foot easement shall be unavailable for use as a driveway or does not qualify or suffice as a path of ingress and egress to Tract A under an ordinance, statute or other restriction, as set forth in said judgment. Reversed and remanded as to all other portions of the judgment, Chief Justice Coleman dissenting.

COLEMAN, Chief Justice (dissenting).

This court has determined that the judgment entered in this case should be reversed, primarily, it appears, because the trial court refused to admit certain testimony into evidence. Since I believe that the testimony was properly excluded and was immaterial in that it could not have altered the outcome of the case, I respectfully dissent.

Appellants contend that the court erred in withdrawing their case from the jury because there was an issue of fact as to whether appellees were violating certain restrictions on the use of their property.

By deed dated July 10, 1967, the Youngs conveyed to the Gardners "Lot B", describing it only by a metes and bounds description. Specific reference was made to the "Declaration" of June 29, 1967, and to the easements reserved therein. The second of these restrictions reads: "All utility, garage or service areas shall be screened with a brick wall sufficient in height to obscure the presence of such utility, garage or service area from the other residents as may be located on said Tracts A and/or B."

Covenants or restrictive clauses in instruments concerning land must be construed strictly against the grantor. In construing such covenants the court should ascertain the intent of the parties from the language used in light of the existing circumstances. Fischer v. Reissig, 143 S.W. 2d 130 (Tex.Civ.App.—Austin 1940, writ ref.).

This covenant requires that all utility, garage or service areas shall be screened. It requires that the screen be a brick wall sufficient in height to obscure the presence of such areas from the other *residents* as may be located on said Tracts A and/or B." The emphasis is placed on the height of the wall. The object to be attained by the covenant was to obscure the service areas from the sight of the residents of the adjoining lot. It requires the construction of a wall of sufficient height to accomplish that end.

A resident is one who dwells permanently or continuously at a particular place. The phrase "as may be located" on the lot further restricts the meaning of the covenant. The covenant must be held to require the Gardners to construct a brick wall high enough and so located as to conceal or hide, make inconspicuous or indistinct, the utility, garage and service areas

from the view of Mr. and Mrs. Young, and such others as may reside on Lot A, when they are physically on that lot.

The Gardners have constructed a substantial brick wall adjacent to the dividing line between Tracts A and B. This fence extended to a point approximately even with the outer edge of the carport, which the testimony establishes as being fifteen feet from the property line. Forms had been laid to extend the fence in a curve out into the 10′ driveway easement and to the carport. Construction was temporarily halted by an injunction, which was later dissolved. Appellees sought, and were granted, in this action an injunction prohibiting appellants from interfering with such use of the easement.

It is clear that if appellees' fence should be extended over the driveway easement it would be impossible to see the carport with the possible exception of a small part of the roof. As presently completed it can be seen by one standing within fifteen feet of the Youngs' southeast property line. The Youngs testified that they could see the carport. There is no disputed issue of fact.

The question of what constitutes a violation of a restrictive covenant is a question of law. Only issues of fact should be submitted to the jury. Baker v. Brackeen, 354 S.W.2d 660 (Tex.Civ.App.—Amarillo 1962). The covenant in issue does not prohibit unconcealed carports and service areas. It is an affirmative covenant requiring the construction of a brick wall. The wall erected by appellees reasonably complies with its provisions.

In Alexander Schroeder Lumber Co. v. Corona, 288 S.W.2d 829 (Tex.Civ.App.— Galveston 1956, writ ref. n.r.e.), Justice Gannon wrote:

"... While we hold that as a matter of strict legal right the general plan prohibits the erection of fences on property in the addition, we do not wish to be taken as indicating that such legal

right is necessarily enforceable in equity. The law side of the docket does not concern itself with servitudes of the character under discussion. We feel that before a suitor in equity could successfully complain of a neighbor's fence in the addition involved, he would have to show something more than a trivial annoyance, but rather such a fence as here, which, from the photographs in evidence, clearly appears to be a material detriment to the full enjoyment of their homes by residents of the addition."

Appellants' complaint necessarily is that the wall as now constructed does not completely conceal the carport and parking facilities. The carport is in plain view of appellants from their driveway on the 40′ easement. The fact that the carport can also be seen from one small area of appellants' lot is not such a material detriment to the full enjoyment of appellants' home as to warrant the intervention of a court of equity.

The trial court did not err in refusing to submit to the jury, the requested Special Issue G, inquiring whether appellees failed to screen their carport with a brick wall sufficient to obscure its presence from other residents located on appellants' adjoining lot.

Restriction number 3 contained in the Declaration of Subdivision provided: "No structure shall be built on Tract B nearer than 40′ from the South boundary line of said Tract or nearer than 60′ from the West boundary line of said Tract." On August 25, 1967, Mr. Gardner presented Mr. Young with a plat of his proposed house and two drawings, one purporting to be a view of the house from the side facing the Young property and the other a view from the driveway located on the 40′ easement. The plat had typed on it: "We agree to amend the restrictions applicable to Lot 1, Block 91, Tall Timbers Addition, to allow the construction of improvements on Tract B no nearer than 15′ from the South boundary and 35′ from the West

boundary." The Gardners approved this amendment to the building line restrictions and evidenced their approval by affixing their signatures to the plat below the quoted writing. The Gardners also signed the plat. Thereafter the Gardners proceeded to construct their house on Tract B.

Appellants filed their original petition April 26, 1968. In the pleading on which they went to trial they alleged that Mr. Gardner represented to them that the garage, service area, and servants' quarters would be screened by a brick wall so as to obscure such areas from residents of Tract A and from persons using the Youngs' driveway constructed on the 40′ easement and that they relied on such representations when they approved the amendment to the building line restrictions as reflected by the plat dated August 25, 1967.

The petition alleged that just prior to the date of its filing the plaintiffs learned that the defendants intended to construct and were constructing utility, garage, and service areas facing and fronting upon said forty (40) foot easement and the driveway to plaintiffs' home "not only contrary to . . . the applicable restrictive covenants to which Tract B is subject, . . . but contrary to and in violation of the representations, assurances, agreements and pretense of defendants to plaintiffs at and prior to the time plaintiffs approved said plat. . ." That they prayed for injunctive relief and that said plat "and plaintiffs' approval thereof, which is void and without force or effect," should be cancelled and declared to be of no force or effect. The plaintiffs also sought damages for the decreased value of their property due to the violations of the restrictions by the maintenance of the service area "in violation of and contrary to the aforesaid representations, assurances, and pretenses made by Defendants to Plaintiffs."

Appellees filed a motion in limine requesting the court to instruct the attorneys for plaintiffs and their witnesses to refrain from mentioning, directly or indirectly, in

any manner, any purported oral agreements between any of the parties, which would have the effect of varying the terms of written documents and to impress additional building restrictions upon the defendants' real property, all in violation of the parole evidence rule and the Statute of Frauds, without first approaching the court out of the hearing of the jury and advising the court of the nature of such evidence and the reason for which it will be offered. The motion in limine was granted.

Subsequently testimony of Mrs. Young was taken for a bill of exceptions. Appellants' counsel stated to the court that it was his position that the plaintiffs were entitled to attack the agreement changing the building lines under numerous exceptions to the parol evidence rule and that it was his understanding that the court's ruling on the motion in limine prevented him from doing so for any reason and further prevented him from asking questions which might lead up to or lay a ground work for such at attack. He then represented to the court that the testimony to be elicited should have gone to the jury in connection with the defendants' Exhibit Number 3. At the conclusion of the direct examination of Mrs. Young for the purpose of the bill, counsel for the appellants offered the testimony for the purpose of having the court submit it to the jury. Thereafter, following a similar procedure, Mr. Young testified on a bill of exceptions. The testimony of Mr. and Mrs. Young so taken is recorded in 41 pages of the Statement of Facts.

"A contract, which has been reduced to writing, and which imports on its face a complete expression of the whole agreement, without any uncertainty or ambiguity as to the object and extent of the engagement, must be taken as expressing the final views of the parties, as well as the full consummation of their undertaking.

"In the absence of fraud, accident, or mistake, parol evidence is inadmissible to vary, alter, or add to the terms of a written contract, clear in its terms, unless upon its face it in some manner rebuts the presumption that it is complete. This rule forbids the adding by parol where the writing is silent, as well as to vary where it speaks." Guarantee Life Ins. Co. v. Davidson, 234 S.W. 883 (Tex.Com.App.1921).

If the parties intend to restrict a writing to specific elements or subjects of negotiation, then other subjects of negotiation can be established even though they are different from the writing. Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184 (1955).

The writing in question appears on its face to be restricted to a specific subject of negotiation. While it relates only to the building set-back lines, the agreement expressed in the writing and the alleged oral agreements all relate to the same general subject of amending the property use restrictions. The agreement imports on its face to be a complete expression of the whole agreement without any uncertainty or ambiguity. We must presume that the trial court has found that the writing expressed the complete agreement. ". . . An oral contemporaneous condition cannot be proved if it is inconsistent with the terms of a written instrument duly delivered to the party against whom the condition is sought to be invoked." Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515 (1946).

The fact that a prior oral agreement inconsistent with the written agreement induced a party to enter into the written agreement would not remove the bar of the parol evidence rule. Firestone Tire & Rubber Co. v. Fisk Tire Co., Inc., 131 Tex. 158, 113 S.W.2d 175 (1938).

The appellees also interposed an objection based on the Statute of Frauds. A building restriction requiring that a residence built on an identified lot face a particular street was held to be an easement in Miller v. Babb, 263 S.W. 253 (Tex.Comm'n App. 1924, judg. adopted). In that case the court held an easement must be created

by grant, and cannot be created by parol agreement. The court also said:

" . . . The grantor was charged with knowledge that under the law no such easement in favor of his land could be created by an oral agreement or promise, even if made as part of the consideration of the sale. A contract prohibited by law cannot be enforced on the ground that it is supported by a consideration. . . . Article 3965, Revised Statutes, having provided that a contract for the sale of real estate cannot be enforced unless it is in writing, such contract resting in parol only is non-enforceable either in law or in equity. . . . "

The proffered testimony that appellees agreed to screen garages and service areas from the sight of those attempting to use the easement was properly excluded as being barred by the Statute of Frauds. For the same reason the court properly excluded the testimony that appellees agreed not to construct such service areas fronting on the driveway and 40' easement. Rector v. Anderson, 1 S.W.2d 699 (Tex. Civ.App.—Ft. Worth 1928). Such agreements constitute restraints on the use of land and must be in writing to be enforceable. Appellants' cause of action for damages for breach of the alleged oral agreements or for injunction to enforce them, is barred by the Statute of Frauds.

Appellants cite the rule that after the acceptance of a conveyance of lands the vendee cannot avail himself of the warrant of a written contract for the sale thereof in an action for the recovery of the purchase money. Newsom v. Newsom, 378 S. W.2d 842 (Tex.1964); Anderson v. Eliot, 333 S.W.2d 654 (Tex.Civ.App.—Eastland 1960, writ ref.). This rule of law is simply inapplicable. There is no written instrument sufficient to satisfy the Statute of Frauds conveying to appellees an interest in appellants' real estate for which they could recover a consideration. The claimed consideration is not a simple mon-

ey payment. It is an oral agreement to convey an interest in real estate.

In their pleadings the Youngs complained that the Gardners represented to them both orally and by means of the plat and drawings that their garage, carport, and service areas would be screened from view not only from the Gardners' property, but also from the driveway and easement leading to it. No other false representations were alleged. By the motion in limine they were forbidden from introducing evidence which would have the effect of varying the terms of written instruments or of impressing additional restrictions on the Gardners' property. In the rather voluminous testimony supporting the bill of exceptions, the only testimony pertinent to the pleadings, which was forbidden by the court's ruling on the motion in limine, was that relating to an alleged agreement that the garage and service areas would be screened from the view of one using the driveway leading to the Youngs' house, testimony that no service areas would be built facing the easement, and testimony concerning inducement and reliance.

While parol evidence tending to prove fraud on the part of appellees which induced appellants to execute the agreement amending the building set-back line was not barred by the parol evidence rule, appellees had the right to insist that such evidence be restricted to that relating to the grounds of fraud alleged in plaintiffs' petition. Where a plaintiff pleads generally a state of facts, and goes further and pleads specifically and particularly on the same subject, he cannot rely upon the general allegations, but is confined in his recovery to those specifically and particularly plead. Specific allegations will control those of a general character. Houston Printing Co. v. Hunter, 105 S.W.2d 312 (Tex.Civ.App.—Ft. Worth 1937, aff'd 129 Tex. 652, 106 S. W.2d 1043); Sutton v. Lewis, 176 S.W.2d 765 (Tex.Civ.App.—Ft. Worth 1943, writ ref.); Richardson v. First National Life Insurance Company, 419 S.W.2d 836 (Tex.1967).

Points five, six and seven complain of the trial court's refusal to permit the Youngs to testify that Mr. Gardner promised them that there would be no carport fronting their driveway; that the structure fronting the driveway would present a solid brick face to persons on such driveway; and that the parties agreed that the building line restrictions would be amended in the future by another written instrument setting out adequate protections for both parties and that the August 25th instrument was never intended as the final, complete and integrated agreement.

The testimony referred to in points five and six supports the allegations of fraud found in appellants' petition, but because of the Statute of Frauds this testimony was not admissible in support of plaintiffs' cause of action for injunction or for damages. Miller v. Babb, supra. Appellants stated that the purpose for which the evidence was offered was to attack the agreement changing the building lines. The statement referred to in points five and six are promises relating to future actions. Appellants have alleged that these promises were "pretenses"; that is, that the statements were false when made. The testimony was material on the issue of fraud inducing the execution of the amendment to the building line restriction, but in the absence of any evidence that appellees did not intend to perform their promises at the time of making the promises, there is no evidence of fraud. Stanfield v. O'Boyle, 462 S.W.2d 270 (Tex.1971). The parol evidence rule is applicable and the evidence could not have been considered had it been admitted.

The testimony that the parties did not intend the August 25th agreement to be the final, complete, and integrated agreement should not be admitted before the jury for the purpose of proving that fact. James v. Doss, 184 S.W. 623 (Tex.Civ.App.—Amarillo 1916); McCormick and Ray, Texas Law of Evidence, § 1602. This testimony would not come within appellants' stated purpose for making the Bill, that is, to present evidence attacking the written agreement.

Appellants tendered all of the testimony of each witness taken on the Bill. Some of the testimony could not have been admitted over a proper objection. The trial court did not err in refusing to admit the testimony under those circumstances.

Appellants' first point submits that the court erred in withdrawing from the jury appellants' entire case and entering judgment denying appellants recovery as a matter of law. While the trial court announced at the conclusion of plaintiffs' case that he sustained appellees' motion for directed verdict, this ruling was subsequently withdrawn. The record does not reflect that the court thereafter ruled on the motion. The judgment does not recite that an instructed verdict was granted. The case was tried to a jury. If issues of fact existed, appellants were required to request that such issues be submitted to the jury. Whether the trial court erred in entering judgment against the plaintiffs on their cause of action in this case must be determined by an examination of its rulings on the issues requested by them. Point one does not present error.

Appellants contend that the trial court erred in refusing to submit their requested Special Issues K and L. The first such issue reads: "Do you find from a preponderance of the evidence that the drawings showed to the Youngs on August 25, 1967, to obtain the signature of the Youngs, contained misrepresentations?" The second of these issues was predicated and asked whether such misrepresentations induced them to sign an agreement they would not otherwise have signed.

These issues were properly refused. Requested Special Issue K does not confine the attention of the jury to the misrepresentation alleged in the plaintiffs' petition as required by Rule 277, T.R.C.P., and would allow a finding based on an immaterial misrepresentation. It is not an ultimate issue of fact, but rather inquires as to a matter evidentiary in nature. Crow-

ell-Gifford Furniture Co. v. Cloutman, 276 S.W.2d 539 (Tex.Civ.App.—Beaumont 1955, writ ref'd, n. r. e.) ; Nussbaum v. Anthony, 214 S.W.2d 686 (Tex.Civ.App.—Amarillo 1948, writ ref'd, n. r. e.).

The refusal to submit Requested Special Issues H and I was not error. Requested Issue H reads: "Do you find from a preponderance of the evidence that on August 25, 1967, Gardner made such representations as to mislead or misrepresent facts to the Youngs?" Again, the issue does not confine the jury to the misrepresentation alleged. The issues requested are not sufficient to support a judgment based on actionable fraud since there could be no finding that the misrepresentation related to a material matter. The misrepresentation alleged related to future action and no issue was requested to determine whether there was an intention to perform at the time the representation was made, and such an issue would be deemed waived. There was no evidence to raise this issue. The issues requested were not in substantially correct wording. Rule 279, T.R.C.P.

Appellants urge that the trial court erred in holding as a matter of law that they have no current right to use any part of the 10-foot easement reserved for use as a driveway across appellees' lot, and enjoining such use. The Declaration of Subdivision provides:

". . . such property being subject to a 10' wide easement along the south boundary line of Tract B and adjacent to an existing 40' easement, such 10' easement being for use and benefit of Tract A as a driveway only, and to be used as such only in the event that the adjoining 40' easement shall be unavailable for use as a driveway or in the event the 40' easement does not qualify or suffice as a path of ingress or egress for Tract A under any ordinance, statute, or other restriction . . . No use shall be made of the 40' easement adjoining Tracts A and B other than as a driveway or drive area . . ."

Appellants constructed their driveway on the 40' easement except for one area where they decided to place it on the 10' easement because of trees growing on the 40' easement. They have continued to use the 40' easement for driveway purposes as have other property owners whose land adjoins the easement. Mr. Young testified that the City Building Code Inspector required that the 10' easement be created before appellants could obtain a final inspection of their building. Mr. Young testified that the City of Houston would not issue a "final building permit unless we located our driveway, or had that 10' easement to use." He also testified that he was denied a final building inspection because he had no access to a public street for fire trucks. Sec. 504 (a) of the City Code, City of Houston, Texas, was introduced into evidence. In part it reads: "Buildings shall adjoin or have access to a public space, yard, or street on not less than one side. Required yards shall be permanently maintained." The subheading preceding this section reads: "Location on Property."

It is an undisputed fact that up to the date of the trial the 40' easement was available for use, and was used as a driveway by appellants. The quoted ordinance is the only ordinance, statute, or restriction in evidence bearing on the question of whether the 40' easement qualifies or suffices as a path of ingress or egress for Tract A. Appellants' building does not adjoin a public space, or street. It does adjoin a yard. This satisfies the ordinance. The yard is a "required yard" which must be permanently maintained. The ordinance does not affect the availability of 40' easement for use as a driveway for Tract A. The trial court did not err in enjoining the use of the 10' easement by appellants.

The owner of land subject to an easement of way may make any use of the land that does not unreasonably interfere with the use of the easement as a passageway. 25 Am.Jur.2d, Easements and Licenses, § 90, p. 496. If the easement reserved by the Youngs had granted an unconditional right

to use the 10′ strip of land for driveway purposes, the construction of a brick wall across it would undoubtedly have been contrary to the terms of the reservation and subject to abatement. However the easement is conditional and the condition authorizing its use has not occurred. Until the condition authorizing use by the Youngs does occur, the Gardners may make any use of the property they desire unless such use is of a nature as would render the property permanently unavailable for use as a driveway, or would violate an applicable restrictive covenant.

"An easement in favor of land gives no exclusive dominant right over the servient land unnecessary to the enjoyment of such easement. The dominant owner must make a reasonable use of the right so as to not unreasonably interfere with the property rights of the owner of the servient estate. This applies to either maintenance or use. In the light of these principles, the judgment of the trial court establishing these easements and protecting same is to be construed." Pokorny v. Yudin, 188 S.W.2d 185 (Tex.Civ.App.—El Paso 1945).

## ON MOTIONS FOR REHEARING

EVANS, Justice.

In their motion for rehearing appellees argue that we erroneously concluded that the trial court withdrew the appellants' case from the jury and rendered judgment on those issues against appellants as a matter of law. We have again examined the record and conclude that our initial evaluation of the record was correct.

Appellees argue that they withdrew their motion for instructed verdict and never reurged it to the court. However, the record shows that at the close of the plaintiffs' case, the court granted appellees' motion for a directed verdict; then at the conclusion of plaintiffs' bill of exceptions, appellees' counsel asked the court to withdraw its order granting appellees an instructed verdict and to reserve ruling on

that motion "until a later stage in the lawsuit." Appellees' counsel said he was "simply going to ask the court to withhold its ruling" and would go forward with his evidence. It seems clear from the record that the appellees' motion was never withdrawn from the court's consideration and that appellees merely requested the court to refrain from ruling on the motion at that time. The trial court obviously considered this to be the case:

"THE COURT: Under those circumstances I will just take the motion along with the case and we will then proceed on that basis."

After close of all the evidence, during discussion between the court and counsel as to the preparation of the court's charge, the following statements were made by appellees' counsel and the court:

"MR. EDWARDS: Your Honor, May I ask what the disposition, for the record, is going to be on all of my special issues?

"THE COURT: I am going to refuse them—at least I think so now—but I am going to go back over them in the morning.

But what I have read I am going to refuse now. I don't think there is a fact question anywhere in here.

I am not belittling your case. I don't think there is a legitimate fact question.

"MR. EDWARDS: The Court remembers, I take it, that I have still got a bill of exceptions to make with Mr. Gardner and the doctor?

"THE COURT: You bet. Yes. We will get all of that in."

Again it seems clear from the record that the court had at that point determined that there was no fact issue to present to the jury on appellants' case and the court therefore refused to submit any of the issues requested by the plaintiffs on their case. While certainly preferable as a matter of practice, it was not essential that the

trial court formally announce its decision that judgment on the appellants' issues was determined against appellants as a matter of law.

In our original opinion, we explained that our holding that the case must be reversed and remanded does not rest upon a determination that the trial court erred in withdrawing the case from the jury; it is based, rather, on the trial court's action in the exclusion of evidence which we have found to constitute harmful error.

Appellees further contend, in their motion for rehearing, that the record does not support the statement in our majority opinion to the effect that the trial court had made it clear to counsel that evidence would not be permitted as to collateral expressions between the parties relating to the August 25, 1967 instrument.

In making his Bill of Exception to preserve error with respect to the evidence excluded, appellants' counsel stated to the court:

". . . Defendants' Exhibit Number 3 was never properly proven up nor properly admitted, but that once admitted, even for the limited purposes for which it was admitted, as I understood it by the Court at the time, we had taken the position and do take the position that we would be entitled under numerous exceptions to the parol evidence rule to attack this instrument and it's my understanding that heretofore the Court has granted a motion in limine which is any way prevented me from doing so for any reason whatsoever and it's my understanding that the Court has prevented me under the motion to even lay any groundwork or ask any questions which might lead up to or present to the Court a situation which would more able—more ably—more better enable this Court to determine whether or not we should be able to go forward.

"Therefore, Your Honor, for these reasons we would like to present on this bill of exception the following testimony which we feel like should have gone to the jury in connection with Defendants' Exhibit Number 3 and all of which we contend, Your Honor, are one of—more than one of the numerous exceptions to the parol evidence rule."

At the conclusion of the testimony of Mrs. Young on the plaintiffs' bill, appellants' counsel stated to the court:

"For the purposes of the bill of *review,* Your Honor, I think that completes the testimony and we submit, Your Honor, that a very large portion of that, if not all of it, should be permitted to go to the jury and we now offer it for the purpose of having the Court submit it to the jury, Your Honor, under the exceptions to the parol evidence rule."

At the beginning of Mr. Young's testimony on the plaintiffs' bill, counsel for the appellants stated to the court:

"Your Honor, for the purposes of the bill I understand that I have been also prevented from going into the same subject matters we just discussed with Mrs. Young by virtue of the same motion in limine and this testimony is offered Your Honor, as an indication to the Court of what we wanted to offer to the jury and feel like should be offered to the jury, and we offer it under a bill of exceptions."

After the conclusion of the plaintiffs' bill of exceptions, counsel for appellees made the following statement to the court, which, according to our reading, is substantiated in the record:

"Let me make clear where we stand as I see it, on the record.

"We have taken the position and we will take this position, and we will continue to take it, that whereas evidence can be admitted explaining the events leading up to a written transaction, parol evidence cannot be admitted to vary or change or add to the terms of the written agreement.

"Now, the Court has ruled that, and I think unquestionably correctly so from the beginning, with the ruling of your Honor on the motion in limine.

"And the Court has kept out, and I trust will keep out, consistent with your prior rulings, any parol evidence that tends to vary the terms of the written agreement of August 25, 1967, as well as any parol evidence that tends to violate or change or vary the four restrictions here in question, which are placed on the record on this property as late as June 29, 1967.

"Now, that is one thing.

"The motion for summary judgment is another thing—for instructed verdict is another thing.

"Your Honor ruled on that motion and then gave counsel, as he was entitled, to have the right to make a bill of exception on your evidentiary ruling, if you will recall."

A reading of the entire statement of facts in our opinion demonstrates that both counsel and the court were well aware of the effect of the court's rulings on such evidentiary matters. Every ruling of the court was consistent with its ruling sustaining appellees' motion in limine. We remain of the opinion that appellants properly preserved the asserted error in the exclusion of such evidence by making appropriate bill of exception and offer of evidence for submission to the jury.

Both appellants' and appellees' motions for rehearing are overruled, Chief Justice Coleman dissenting.

COLEMAN, Chief Justice (dissenting).

I respectfully dissent for the reasons set out in my original dissenting opinion. In addition it is my view that the Bill of Exception is insufficient because it does not show a ruling by the court on the offer of testimony. The fact that counsel may have anticipated an adverse ruling should not dispense with a requirement that a ruling

be obtained. Coleman v. Pacific Employers Insurance Company, 484 S.W.2d 449 (Tex.Civ.App.—Tyler 1972, writ ref., n. r. e.); Marek v. Baylor County, Texas, 430 S.W.2d 220 (Tex.Civ.App.—Eastland 1968, writ ref., n. r. e.); United Benefit Fire Insurance Company v. Stock, 344 S.W.2d 941 (Tex.Civ.App.—Houston 1961).

No objection was made at the time the testimony taken on the bill was tendered and no ruling was announced. The mass of testimony offered on the bill was largely unrelated to the questions asked in open court. The answers to those questions were excluded, apparently, on the ground that the questions infringed on the court's order sustaining appellants' motion in limine. It is well settled that an erroneous ruling on a motion in limine to suppress testimony cannot be reviewed. It is my opinion that before a question is presented for review, the evidence should be offered, the objection stated, and a ruling secured. Where the bill fails to show an objection to the evidence offered, and a ruling admitting or refusing to admit the proffered evidence, the complaining party should be confined on appeal to the specific ruling of the trial court which prompted the bill of exception. The trial court should not be required to sift the mass of testimony offered to determine whether a portion of it might be admissible on a point to which his attention had not been called. The purpose of the bill is to show the answer the witness would make when an objection to a question has been sustained. Where in the interest of saving time the bill is expanded to include other questions which the attorney anticipates might be subject to an objection, such procedure should be entered upon with the permission of the court, who should require that objections be stated, and who should rule on the admissibility of each question to which an objection is interposed. Such a procedure would obviate the difficulty presented by the informal procedure adopted in this instance. I would hold that no error was shown which was calculated to cause and probably did cause the rendition of an improper judgment.